SERGIO TORRUELLA CORTADA, Plaintiff and Appellant, v. SUCESIÓN J. SERRALLÉS, Defendant and Appellee.

No. 7993. Argued April 23, 1940.—Decided July 10, 1940.

*Raúl Matos* for appellant. *Francisco Parra Capó* and *Francisco Parra Toro* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

This is a suit for injunction brought, in the District Court of Ponce, by Sergio Torruella Cortada against Sucesión J. Serrallés, a civil agricultural and industrial partnership, wherein prayer was made for a decree permanently enjoining the defendant from extracting water from the wells constructed in its property at the distance in which they are located from another well belonging to the plaintiff and constructed in his own property, with costs, expenses, and attorney's fees.

The defendant answered, the case went to trial, and the court decided it by a judgment of April 27, 1939, dismissing the complaint, with costs, but without including attorney's fees, as debatable technical questions were involved. It is against that judgment that the present appeal has been taken, and both parties have submitted extensive briefs which show a careful and able study of all the questions involved.

From the pleadings and the stipulations presented by both parties for the purpose of a decision on the merits, the following facts appear as admitted:

The plaintiff is the owner of a rural property measuring thirty-eight acres *(cuerdas)*, according to the title deeds, and fifty-four acres, according to an actual survey, located in the ward of Machuelo Abajo, at the place called Monte Grande, in the Municipality of Ponce, and the defendant is the owner of a one-third undivided interest in, and lessee of the re-

mainder of, another property which adjoins that of the plaintiff and which contains nine hundred and twenty-eight acres.

Both properties were leased to the same person who, more than thirty years ago, in order to irrigate the sugar cane which he cultivated in both properties, brought to the surface waters flowing through the subsoil of the two estates and established an irrigation system composed of a battery of twelve tubular wells connected by a horizontal pipe, seven of the wells and pumping apparatus being located in the property of the plaintiff and five wells and the common outlet in the property of the defendant.

By the use of said system, which was operated by means of a single motor, the lessee irrigated sixteen acres pertaining to the estate of the plaintiff and a certain number of acres belonging to the estate of the defendant—from one hundred and seventy-five to one hundred and eighty, according to the uncontroverted testimony of defendant's witness, J. Marvin Giles.

Both properties continued to be irrigated in the same way after the lessee had ceased to cultivate them upon the termination of his lease, the property of nine hundred acres passing to the defendant and that of thirty-eight acres to the plaintiff, who leased it to Vidal Febles for a term of four years beginning July 1, 1937. Febles subleased it to the defendant, until recently the latter, without any permit or license from the plaintiff and against his will, constructed two deep wells 18.15 and 34.42 meters distant from the last well of the plaintiff, which was one of those constructed over thirty years ago by the lessee of the property, and the three wells were in a straight line. Once the new wells were installed, the defendant abandoned the old ones, and it now irrigates its plantations in both properties with the water obtained from the former.

Up to this point the facts are undisputed. The controversy arises when the plaintiff maintains that the defendant acted contrary to law—sections 22, 23, and 24 of the Law

of Waters—and that its acts are causing him considerable damage, difficult to appraise, and of an irreparable character, in that it appropriates to itself waters from the subsoil of his property diverting them from their natural channel, to the prejudice of his agricultural work, the plaintiff lacking any speedy and effective remedy in the ordinary course of law other than that of the permanent injunction which he seeks in order to enforce his right; and when the defendant answers that the waters for the irrigation of both estates in the proportion indicated having .been brought to the surface at the same time and the twelve wells constructed therein having been used as an irrigation unit, the construction of new wells is the mere replacement of the old ones and not a new discovery (alumbramiento), and that an injunction does not lie as the plaintiff has failed to show that he has suffered any damage since from the supply of the old wells, despite the diminution claimed, he has available more water than the proportionate share which corresponded to his property from the beginning.

We know how the controversy was decided by the trial court. Was such decision correct? Let us see.

■ In order not to extend this opinion too much, and to avoid unnecessary repetition, instead of considering separately the errors assigned by the appellant in his brief of more than one hundred and fifty pages, some of which relate to the reasoning of the lower court and not to the judgment itself, we will from the beginning consider as a whole the problem to be solved, on the basis of the admitted facts and of those, recited below, which the trial court held, correctly as we think, to have been established by the evidence introduced.

They are as follows:

"The twelve-well system, *prior to the construction of the two deep wells*, produced about *eight hundred gallons per minute*, and when the old pump was in a better condition it produced up to *one thousand five hundred gallons per minute*.

"The deep wells constructed by the defendant produce from *nine hundred to nine hundred and twenty-five gallons per minute.*

"The old pump located in the land of the plaintiff was operated by a *fifty-horse-power* motor, and the pump which the plaintiff Torruella now has is operated by a *seven-and-a-half-horse-power* motor.

"At present, with the water from the two deep wells there are irrigated *eighty acres* of the estate of Sucesión J. Serrallés and *eleven or twelve acres* of the estate of the plaintiff Torruella, which are planted with cane.

"It has been proved, further, that the two deep wells constructed by the defendant when in operation *diminish* the supply of water from the wells installed in the property of the plaintiff Torruella.

"According to the testimony of the engineer Fernando Sosa, an expert witness of the plaintiff, the seven-a-half-horse-power pump which was installed by the plaintiff Torruella in his property and which covers two of the seven wells remaining therein, extracts from those two wells from *four hundred to four hundred and fifty gallons of water per minute.* He further stated that when the pump of Sucesión J. Serrallés and the pump of plaintiff Torruella were operated at the same time that of the plaintiff Torruella yielded less water, that is, *a difference (diminution) of 100 gallons per minute.*"

The law that governs the matter is the Law of Waters, which is substantially the same Law of Waters of June 13, 1879, extended to Puerto Rico in 1886—Comp. Stat. 1911, p. 458 *et seq.*—and the sections thereof relied on literally copied read as follows:

"Art. 22. When it is sought to bring to the surface subterranean water by means of artesian wells, underground passages, or galleries, the person causing it to arise to the surface shall be the owner thereof in perpetuity, and shall not lose his right thereto even though it should go beyond the property on which it rose, whatever direction the discoverer may desire to give thereto while retaining its ownership.

"If the owner of the water brought to the surface should fail to construct an aqueduct to conduct it through the lower estates which it may cross, and should abandon it to its natural course, then the owners of such estates shall enjoy the temporary right granted them by articles five and ten with reference to natural springs situated on higher estates, and the definite right established

by article ten, with the limitations set forth in articles seven and fourteen.

"Art. 23. The owner of any estate may bring to the surface and appropriate in full, by means of artesian wells, underground passages, or galleries, the water found beneath the surface of his estate, provided he does not divert public or private waters from their natural channel.

"Should there be danger that the works upon the artesian well, underground passage, or gallery will cause a diversion or diminution in the volume of public or private waters destined to a public service, or to a preexisting private use, under legally acquired rights, the alcalde may suspend the works on his own motion, at the instance of the ayuntamiento in the first case, or upon complaint of the persons interested in the second case.

"The order of the alcalde shall be final in administrative channels (*causará estado*) if no appeal should be taken therefrom within the legal period to the governor of the province, who shall render the decision which may be proper after hearing the person interested and after an examination and report by experts.

"Art. 24. The works referred to in the foregoing article for the purpose of bringing water to the surface can not be executed at a distance of less than forty meters from buildings belonging to others, from railroads or highways, nor at a distance of less than one hundred meters from other similar works, or from a spring river, canal, irrigating ditch, or public watering trough without proper permission from the respective owners or from the ayuntamiento, in a proper case, after the institution of proceedings; nor can they be executed within the district of fortified points without permission from the military authorities.

"Nor can such works be performed upon a mining claim without a prior agreement as to compensation for damages. If no agreement be reached the administrative authority shall determine the conditions of the compensation, after hearing the opinion of experts appointed for the purpose."

For a proper understanding of the real situation existing in this case, and hence for the correct application of the law, it must be borne in mind that the right of the owner of an estate to the waters which flow through the subsoil thereof is not an absolute one. "Our positive legislation," it is said in A. Maura's *Dictámenes,* selected and classified by Miguel

Maura Gamazo and José Romero Valenzuela, Vol. II, p. 403, "does not vest the ownership of the subterranean vein in the owner of the soil, nor in the miner of the subsoil; it awards the waters to the person who appropriates them by means of underground, collecting the waters, causing them to arise to the surface, and making them available for use."

Over thirty years ago, the lessee of the adjoining estates belonging to the parties to this suit brought to the surface the waters which flowed through the subsoil thereof, collected the same, and made them available for use and used them in irrigating sixteen acres of the estate of the plaintiff and one hundred and seventy acres of the estate of the defendant. Such use continued for many years. The lease contract terminated and the lessee returned to the lessors the actual possession of their properties, together with the valuable improvement of the wells which were constructed in them and which formed an irrigation unit.

So long as both properties continued to be cultivated under a single management their irrigation offered no difficulty. The difficulty arose when the defendant, owner of a part and lessee of the remainder of the larger tract, acting on its own initiative, constructed therein two new wells for the utilization of the waters and, as it obtained a favorable result, it abandoned the old wells and continued to irrigate from the new wells the land cultivated in its own property as well as that cultivated in the property which the plaintiff had subleased.

The new wells were constructed 18.15 and 34.42 meters, respectively, from the last of the old wells existing in the property of the plaintiff. As we have seen, the law requires that the distance between such works executed for bringing water to the surface and other existent similar works must be not less than one hundred meters. Therefore, if said new wells constituted a new discovery (alumbramiento), it would suffice merely to apply the law to the facts without further

reasoning in order to decide the case in favor of the plaintiff.

■■ But did such construction constitute a different discovery from that made by the lessee of both properties more than thirty years previously? If that question can be answered in the negative, the situation is entirely changed and the case must be decided adversely to the plaintiff, as was done by the trial court.

Let us revert to the law. Section 22 of the law which has been fully transcribed above says: "When it is sought to bring to the surface subterranean water by means of artesian wells . . . the person causing it to arise . . . shall be the owner thereof in perpetuity . . ." Here the lessee of both estates searched the waters under the surface thereof; he found them and he appropriated them for the purpose of irrigating his farm lands in the proportion which we know. The bringing of the waters to the surface was done at the same time and consequently the right of the owners of both estates for whose ultimate benefit the lessee had acted arose simultaneously. Neither the right of the defendant was anterior to the right of the plaintiff, nor was that of the latter anterior to that of the former.

Were those rights dependent upon the means used by the lessee to obtain the waters or could other means be used at the option of the owners?

In our judgment, once the waters were discovered and brought to the surface, the means for the utilization thereof must be considered as something accessory, subject to change in accordance with future needs and the progress of the times. This being so, the new wells having been constructed by the defendant in a place which adjoined that of the old wells for the purpose of continuing to utilize the subterranean waters of its property which were brought to the surface simultaneously with those of plaintiff's property, the new means of utilization can not be considered as a new discovery *(alumbramiento)*, to which should be applied the

statutory rules that assume the prior existence of the right of the plaintiff: a priority which, as we have seen, is lacking. Hence the question asked above must be answered in the negative.

 Can then the defendant by the use of new means of utilization deprive the plaintiff of his right? Certainly not. Do the acts heretofore done by the defendant imply a deprivation of that right? Let us see.

There is no showing that the plaintiff and the defendant have regulated between themselves the extent of their rights. The former lessee of both estates surely acted bearing in mind, not their interest, but his own benefit. After he had discovered the waters and constructed the wells, he utilized them to bring about a greater yield of his crops; but after the contract terminated, the improvement remained for the benefit of the owners. Subsequently, the situation remained unchanged, as the plaintiff leased his estate which the defendant occupied under a sublease and the cultivation and irrigation of the land continued under a single management; so that there was never any determination made between the parties as to the extent of their respective rights to the use of the waters which had been simultaneously discovered thirty years before, such task falling to a certain extent upon the courts of justice by reason of the present suit.

We say "to a certain extent," because we think that, in view of the nature of the remedy invoked by the plaintiff such determination should not be made finally but incidentally for the sole purpose of judging whether up to this time the existence of an actual injury has been shown.

By applying the fundamental principle relating to the ownership of the subterranean waters which we have stated and the provisions of the special law on the subject invoked by the plaintiff himself, it will be seen that the right to the subsequent enjoyment of the waters brought to the surface, in so far as the amount thereof is concerned, is dependent upon the supply or part thereof which has been used from

the beginning, and here it clearly appears that at the time that the waters were simultaneously brought to the surface in both estates, the same were used for irrigating sixteen acres on the property of the plaintiff and over one hundred and fifty acres on the property of the defendant, and that the supply continued thus to be enjoyed—the proportion of late being twelve to eighty—until a disagreement arose between the parties; and, as it also clearly appears, from the very evidence introduced by the plaintiff, that notwithstanding the diminution observed in his wells when the deep wells of the defendant are in operation, the supply which he obtains from only two of them, operated by low-powered pumps, is greater than that which has heretofore been used for irrigating his property, it must be concluded that the existence of an actual injury which might serve as a basis for the injunction sought has not been shown. The very authorities cited by the plaintiff and appellant—62 C.J. 520; *Larned* v. *Jenkins*, 169 N.W. 723, 724, 102 Neb. 796—require as a condition precedent for the issuance of the injunction the existence of an injury, and the injury was alleged and is claimed to exist by the plaintiff.

As to whether the deep wells constructed by the defendant may eventually drain all the underground waters of the estate of the plaintiff, this is something speculative. There must be an actual, evident injury. If the suggested situation should actually arise, the plaintiff will not lack means to enforce his right. Up to the present time, what he has proved is a diminution, perfectly explainable as the same subterranean waters are involved, which still leaves a favorable margin to his right.

In these circumstances, we can not reverse the judgment appealed from. It is in accord with the facts, the law, and the jurisprudence. Therefore, it must be affirmed.